v. Edward L. William, also known as Edward Williams Appellant, Ms. Bhatti for the Appellant, Ms. Dillon for the Appellee. Good morning, Ms. Bhatti. Good morning. May it please the Court, Mr. Bhatti, on behalf of Mr. Williams, I'd like to reserve two minutes for rebuttal. Thank you. In Rahafe and later in Greer, the Supreme Court acknowledged that in some unusual cases, an individual convicted of a felony may not know his felon status and may be able to adequately allege that had he known of the 922G knowledge of status element at the time he pled guilty, he would have proceeded to trial. This is such an unusual case. At the time he possessed the firearm in this case, Mr. Williams did not know that he had been convicted of a crime punishable by more than a year in prison. When he was sentenced to his predicate felony at age 16, Mr. Williams received a sentence of treatment and supervision under the D.C. Youth Rehabilitation Act, which he had understood would expunge his felony conviction upon early release from custody. He proceeded to serve the entirety of his treatment and supervision sentence in juvenile facilities and was released early. The District Court erroneously dismissed Mr. Williams' 2255 petition on procedural default grounds and reversal is required for two reasons. First, Mr. Williams has shown cause and prejudice as well as actual innocence to excuse his procedural default. Second, at a minimum, Mr. Williams has cleared the low bar for an evidentiary hearing because there are genuine issues of fact as to his knowledge of status and willingness to proceed to trial. Since you say that he has to show cause and actual precedence or actual innocence, if we look at the first cause and actual precedence and he's not able to show one of those, do we need to go forward and decide the other issues? Yes. So even absence of finding of cause, we still maintain that he has shown actual innocence, so he's cleared that bar, as well as the low bar for an evidentiary hearing on actual innocence. So how do you show cause? So we have argued to show that the argument wasn't available at a time when defendants across the country were making this argument. Correct. We think this case falls squarely under Reed Prong Two, which states that there is cause or the argument's not reasonably available where a near unanimous, and in this case unanimous, body of courts has passed on that argument and that status has been in existence for some time. And that's what the case is here. At least five circuits by the time that Mr. Williams had pled and six by the time that he had been sentenced had all found no knowledge of status requirement. The argument was open here and it prevailed in the Supreme Court. I agree, Your Honor, and I think the difference between this case and, for example, the Lyons case that the 28J letter refers to, is that we have also raised an ineffective assistance claim as cause. And if, in fact, the district court were correct that the federal reporters were replete with challenges to the knowledge of status requirement, then it would have been ineffective for counsel in this case to have not brought up that argument to Mr. Williams, to have brought it up as a defense, and to then have later brought it up on appeal. And the trial counsel was the same as the appellate counsel in this case. The district court here never addressed this basis for cause. It only addressed our first basis. And there is no excuse for counsel to have not raised this on appeal, where the only two arguments he raised in this 3,000-word brief were a dead loser suppression issue and a sentencing issue under the mandatory guidelines, both of which were summarily rejected in a four-line opinion from this court. So there was absolutely no reason, if it were the case that the building blocks were available to counsel all over the states, as the Lyons court says, for counsel here to have not raised that issue, knowing this was the sole count of conviction for Mr. Williams, and knowing that he did not have the knowledge of status in this case. So it's your contention that he, when you're referring to status, that he did not know that he had been convicted of something that carries over a year? That's correct. And I think the way to say- But what about his Youthful Rehabilitation Act? Right. So his understanding was that the YRA sentence, which he received, so he was 16 at the time, he received a sentence under the Youth Rehabilitation Act. And I just want to actually read that provision, because I think it's telling, in terms of explaining how reasonable his understanding was. He thought that under the YRA, his felony would be expunged upon his early release from custody. And the YRA states that if a court shall find that a convicted person is a youth offender, the court may sentence the youth offender for treatment and supervision pursuant to this chapter up to the maximum penalty of imprisonment. Upon the unconditional discharge of a committed youth offender before the expiration of the maximum sentence imposed, the D.C. Board of Paroles shall automatically set aside the conviction. So his understanding was that his, having served his entire time in juvenile facilities, having been a youth, and having been sentenced under the YRA, that his felony had been expunged. And that is- But the issue is not how much time you serve, it's just that the count of the actual criminal portion of it, you can serve over a year. That it varies over a year, it's not what you actually serve. Right. But what the court is also alluding to is it's not the fact of his actual felony conviction, but his understanding of that fact. Did he know that he had been convicted? That's the entire point of rehafe. And if we don't, if we ally that distinction, then we really render rehafe meaningless. And just to put a, just to make this a little easier to understand, the basis of the claim in rehafe was a similar type of misunderstanding of the legal effect of a collateral matter. In rehafe, the petitioner, or the defendant, did not understand the legal effect of the immigration law. He thought, he didn't understand that he was not a legal immigrant at the time he possessed the gun. Similarly here, Mr. Williams did not understand the legal effect of the YRA on his situation. He completely lacked that understanding and therefore thought that he had not been convicted of a felony. And it's that understanding that matters for our purposes. Did the court reject this argument in Henderson? No. In Henderson, Henderson was a different situation because Henderson involved, it involved a YRA sentence, but the court found that it was, they found that the evidence, the actual body of evidence was materially different than here because Henderson had actually expressed his understanding of the maximum time that he was, that was available under that felony statute in the plea colloquy. And that was very telling. Here we have no- Ms. Nelson, your client doesn't, bottom line, never knew he was a felon and never knew that that particular crime carried over a year. It's both? It is both. And I mean, the distinction obviously, I know the government also tries to have it both ways in terms of felony and punishable by over one year, but it's really the latter because the term felony can or cannot fall into that same category. Here he did not understand that he had been convicted both of a felony and of a crime punishable by more than a year in prison. What he was sentenced to was the Youth Rehabilitation Act treatment and supervision. He was not sentenced to prison. He was sentenced to treatment and supervision. He executed that sentence in juvenile-only facilities, first at the D.C. jail, then at Lorton, and then he was released early. So in his mind, he thought, oh, I've never been convicted of a felony or a crime punishable by more than a year in prison. And that was his understanding. And that's exactly what REHAVE obviously makes that distinction between the fact of a felony status and the knowledge of that status. What the district court here did in its finding of prejudice- You don't think he's convicted of the offense and he ends up serving more than a year? He does. Why doesn't that establish the conviction was, for an offense, punishable by a year? Because he didn't, again, it's his understanding at the time. He did not understand that what he had been sentenced to when he served his time in juvenile-only facilities under a provision of the YRA, and based on the advice of counsel, he thought he had not come away with a felony after he had been discharged from custody. That was his understanding. It may be nonsensical to this court, it may be nonsensical to the district court, but that doesn't mean that- There's a knowledge requirement in the statute. I don't have it in front of me, but my recollection of REHAVE was it was all about a grammatical question about, there was a word knowing or knowingly, and it was just a question about what elements of the offense were covered by that. Correct. But the whole point of REHAVE is that- It's knowledge of the nature of the crime, which was punishable by a year. I'm not sure if Your Honor is talking about the predicate felony in REHAVE or the 922-G. Yeah, the predicate. Of his immigration- No, I'm sorry. He has to have knowledge about these elements. In REHAVE, we were not dealing with the felon in possession situation. We were dealing with another provision of 922 in which a person who is not lawfully in the United States cannot possess a gun. In REHAVE, the individual had some academic issues and then was told he might be dismissed, his visa status might be no longer valid. He did not know of that fact. He went to, I believe, a gun range and started firing and then was later picked up for 922. But the point of REHAVE is that the individual needed to have the guilty mind, that knowledge that he was a prohibited person, that he was, in fact, an immigrant that was without lawful status in the United States. So REHAVE expressly dealt with the situation in which the defendant- I'm just reading from REHAVE. A defendant who does not know he is an alien illegally or unlawfully in the United States does not have the guilty state of mind that the statute's language and purposes require. And that was that collateral question of law that I'm alluding to. The relevant knowledge here is that there's a conviction of a crime which is punishable for a term of exceeding a year. Right. That is the knowledge that an individual needs to possess, that he, in fact, was convicted of a crime. But what I'm saying is Mr. Williams did not have that knowledge because he misunderstood. He did not have the understanding that he was- that he had been convicted of a crime punishable by a year because he thought he had a juvenile conviction because, in fact, he was a juvenile, adjudicated under the YRA, pursuant to the provisions of the YRA, spent all of his time in juvenile facilities and then was released early. And so in his- obviously, to us, it may not seem like, okay, this makes sense, but that's irrelevant. His knowledge is what carries-  Is that correct? I'm sorry? He received a three-year sentence. Under the YRA, which is the Youth Rehabilitation Act, which expressly sentences youth to treatment and supervision in lieu of imprisonment. Youth who were convicted of these crimes. But you can also go to a- be sentenced under youthful offender acts or, you know, various other types of crimes, and then sometimes you don't hold a juvenile up and try them as an adult, but it doesn't necessarily mean that they're not convicted of a felony. Again, Your Honor, it's Mr. Williams' knowledge that matters here. And if the court is having trouble understanding- Because it was under the youthful- Right. He thought it was a juvenile adjudication, which many courts have recognized that that is the type of misunderstanding that could survive under reha- I mean, Justice Sotomayor's concurrence in Greer cited juvenile adjudications as precisely, you know, a type of situation in which an individual may not know that they have an adult felony. They actually think they have a juvenile adjudication. And the 10th Circuit case in Wilson that we point to is very on point in this regard. They're- very similar situation. But the defendant was convicted- But didn't it look at where you served, mattering, you know, if you still have the crime-punish vote for a year? And here that works in our favor, right? Like if it was a situation in which he was sentenced and then he served his entire time in adult prison, maybe this court could say, oh, you should have known you were in adult prison. Of course you were convicted. Here, he spent his entire time in juvenile facilities. He had already been convi- He knew he got a YRA sentence. He was told by his counsel that it would expunge. He thought it did expunge because he was released early. And so he didn't know that he had been convicted of a felony, an adult felony. And that distinction is really important. The juvenile adult distinction is important. And I just want to double tap the point that even if this court sitting on the jury would, you know, vote to convict, that is not- that does not matter here. What matters is whether Mr. Williams has shown reasonable probability that he would have gone to trial. And ultimately, that, at a minimum, is a question of fact because some- obviously, if your honor wouldn't have done it, that does not mean that Mr. Williams, in his situation where he had nothing to lose, would not have gone to trial. He had no acceptance of responsibility points that he would have lost. There was nothing that he wanted- that he would have gained by pleading guilty. And so that is the question here, not whether this court would have voted to convict, not whether he, in fact, was a felon or should have known he was a felon, but whether he had that knowledge and whether there was, at a minimum, a question of fact that should have been afforded an evidentiary hearing under the very low bar set forth in 2255. Judge Childs, anything else? No. Judge Rath? Okay. We'll give you some time, Honorable. Thank you. Ms. Dillon, good morning. Good morning. May it please the Court, Simran Dillon for the United States. This appeal turns on whether the defendant can overcome the procedural default of his rehab claim. He cannot. The knowledge of status issue was being actively litigated at the time of his plea, which forecloses any showing of cause based on the futility exception. He also cannot show cause- cannot show prejudice or actual innocence because the record demonstrates that- Before you skip over to prejudice, what about the alternative cause theory of ineffective assistance? Yes, Your Honor. So counsel has argued that even if the claim was reasonably available at the time of the defendant's guilty plea, then that would necessarily mean that counsel was ineffective or failing to raise it at the time of his plea or his appeal. And that's simply not the case. Those are two completely different inquiries. And counsel was not deficient for failing to raise a legal challenge that hadn't even been recognized in this circuit yet. If we look at plea counsel's alleged ineffectiveness, it certainly was not unreasonable for plea counsel to litigate a motion to suppress in this case and then advise his client to plead trial on this defense that he was unaware of his- the nature of his prior conviction when the government could have then presented all of this underlying evidence about the nature of his conviction. And so at the plea level- Ms. Dillon, I'm just wondering, though, if- I mean, that puts a criminal defendant between a kind of a rock and a hard place, right? If the issue is not so novel to create an ineffective assistant claim, but it's also not novel enough to be a cause, you know, for, you know, for failing to- for the procedural default issues. So are there a whole range of issues that sort of fall in between those two standards? I mean, how do those two standards overlap? Well, Your Honor, I don't think they really overlap. I think they're just different questions. I mean, at the time, this wasn't the law in the circuit, but even if it had been, it wouldn't have been unreasonable for a plea counsel to advise his client to take the guilty plea in this instance rather than pursue a rehafe defense, even assuming that rehafes were the established law at the time. And that is because there is great risk for a defendant in having this sort of prejudicial evidence before the jury. And moreover, in terms of whether appellate counsel was ineffective, that's also a different inquiry because appellate counsel is not expected to anticipate changes in the law and is not expected to raise every possible claim on appeal. So when we look at the deficiency prong of Strickland, defendant cannot satisfy either in terms of satisfying cause here. And that's in part because of the reasonableness inquiry. That's correct. And on this record, it was certainly reasonable for the defendant to take the guilty plea rather than going to trial. I know counsel has said that he got no benefit from pleading guilty, but that's not true. I mean, one of his counts was ultimately dismissed, so he did get a benefit. And that also has to play into the analysis under Strickland in terms of satisfying cause. Now, the defendant has also relied on the novelty exception, and I think it's clear that the knowledge of status argument was hardly so novel as to be unavailable to the  defendant. This knowledge of status issue was well known and was litigated across the country at the time of his guilty plea. Less than half of the circuits had even decided the issue at that point. In the 11th Circuit, the case on this issue was actually pending at the time of his plea. And so I would also note that the Lyons case that was just issued by the 3rd Circuit last week found that there was no futility exception met even when the defendant pleaded guilty in 2017, so over a decade after this case when 10 circuits had actually addressed the issue and found that there was no mens rea requirement. Now, I'll turn to prejudice unless the court has any more questions about cause. So the defendant has argued that he believed that his conviction, or he claims it was an adjudication or believed it was an adjudication, was set aside under the lie array. Now, the contemporaneous evidence that we have in the record shows that he was actually on parole at the time for this offense. And so there's really no basis to say that he believed that this conviction had gone away when he, in fact, was reporting to a parole officer. And as we noted in our brief, the PSR had shown that he had been actively reporting to the parole officer and submitting to drug tests. He was on parole beginning in July of 1996 and was arrested in this case in January of 1997. So he was on parole for a period of six months. And I would also note that at the district court level, the defendant did argue that he was completely unaware that he was even on parole. That argument on appeal seems to have shifted, and now he's arguing that he believed he was only on parole for a separate misdemeanor offense. I think that this all calls into question the validity of the claim at all that he did not understand that he had this conviction. And I would also say that the district court's decision to not hold an evidentiary hearing was certainly not an abuse of discretion in light of all of the evidence that the record contained showing that he knew that he had a conviction that was punishable by more than one year. As the district court stated in its opinion, for Mr. Williams to be correct about his understanding of his felony conviction, one would have to accept that he did not realize he was prosecuted as an adult, did not read his plea offer, did not glance at his docket sheet, did not notice he was imprisoned, and forgot he was on parole despite reporting regularly to his parole officer. The plea offer itself shows that one count of attempted possession with intent to distribute cocaine and then parentheses a felony. That's correct. The plea offer itself explicitly stated that this was a felony, and importantly, he did serve more than two years in prison. And Greer tells us that ordinarily a felon knows he's a felon. I think the case is even stronger here when he, in fact, served over two years in prison. The defense has stated that he served his time entirely in juvenile facilities. That's not anywhere in the record. But even assuming he did, he was incarcerated for more than two years and was reporting to a parole officer and knew that his sentence could be revoked for failing. But going to your opposing counsel's statement with respect to this distinction about when you're in a youthful offender setting and you're not actually serving in an adult prison, how is that person supposed to know that there is that distinction that you're still a felon? Well, again, the key inquiry here is did he know he was convicted of a crime punishable by more than a year? Whether you called it felony or not. That's right. And the statute is called felon in possession for shorthand, but really the key inquiry is the length of incarceration that he was subjected to. And I would also point the court to its decision in Henderson from 2024, where the defendant also did receive a YRA sentence in that case and was only sentenced to probation, didn't even serve any term of incarceration. And the court found that there was no meritorious or hate claim there and that the decision to not hold an evidentiary hearing in that case was not an abuse of discretion. And so finally, I would just note that the actual innocence question is distinct from the prejudice question. I think the evidence in the record shows that both of those arguments don't have merit, but the actual innocence standard is much higher. It is that it is more likely than not that no juror, not even one, acting reasonably would have voted to find the defendant guilty beyond a reasonable doubt. And on- Strictly prejudice is just about whether the defendant would have changed his plea decision. That's correct. Actual innocence is about whether the jury would have convicted. Yes, and it's about his claim of factual innocence with respect to the knowledge of status argument. And there is abundant evidence on this record that he was well aware that he was convicted of a crime punishable by more than one year. Unless the court has any other questions, we would ask the court to affirm the district court's order. Judge Childs, Judge Rao. Okay, thank you. Ms. Bowdy, we'll give you two minutes. Thank you. There's a very important clarification I need to make of the 922G statute. It is not just punishable by more than a year with anything. It's punishable by more than a year in prison. And Mr. Williams was not sentenced to prison. He was sentenced to treatment and supervision. That is a key distinction, and I feel like the court is maybe glossing over that important distinction. Prison is not treatment and supervision. A juvenile adjudication is not an adult felony. In addition, there are a few things that the government counsel said that I think need to be clarified. The first thing is that great- Sorry, what were the terms of his treatment? He wasn't in the government's physical custody. He was in the youth portion of the jail, and then in the- Sounds like imprisonment. But that's not the language of the statute. He was not sentenced to- Imprisonment is the word. In 922G, but that's not what this was. It was not imprisonment. And you can look at the YRA text to know that these are different. If the court shall find that a convicted person is a youth offender and the offense is punishable by imprisonment, the court may sentence the youth offender for treatment and supervision, dot, dot, dot, up to the maximum penalty of imprisonment. Those two are different. And that is a very key distinction. The other thing that defense- Sorry, government counsel kept insisting on with respect to ineffective assistance is there was great risk to bringing up this claim on appeal. But that completely contradicts their claim and what the court said in Lyons, that there were all the building blocks available. Any counsel could have raised this claim. And certainly, there was no downside in this situation. There may be situations in which ineffective assistance might not- Between the gap that Judge Rao was alluding to, between the Boosley situation and the in this situation where this was the sole count that Mr. Williams was facing, where he did not know of his status and there were no other claims that had any merit, this was absolutely ineffective assistance for appellate counsel to not raise this issue. Go quickly to your rehab distinction versus the 922G. Because you're saying 922G meant that you had to be in prison. But the rehab inquiry is about whether or not you knew about imprisonment of over a year.  Correct. That's exactly what I'm saying. Imprisonment is not treatment and supervision. And it's not a juvenile adjudication either. Imprisonment is, you know, an adult prison. That is a distinction. And let me- The statute is not key to whether treatment and supervision, which he actually got, is or is not a species of imprisonment. It's key to whether this is a crime punishable by imprisonment. Correct. Which it obviously is. That does not assume the world of juvenile adjudications, which is precisely why Justice Sotomayor in her concurrence highlighted that the government in, I believe, rehaped the oral argument, which the Supreme Court alluded to, highlighted that. And a number of other cases as well, that a juvenile adjudication, even if punishable by five years, is not imprisonment for purposes of the 922G. Okay. And just a few more points. There's nothing in this record that, again, would have concerned a reasonable attorney in terms of not raising this, not raising the 922G as a defense and then later on appeal. The government kind of cutely alluded to the details of this case. In fact, the details of this case would not be- I mean, they actually, I think, work in our favor to the extent that the jury heard them all. If they heard them at all, I think they would have worked in Mr. Williams's favor. He was 16 years old at the time of this alleged rape, sodomy, pud conviction, and he was lured into this drug activity by two males and a 33-year-old prostitute drug addict who then alleged rape. The rape conviction was the whole reason he was in adult court. The government was not able to substantiate the rape conviction that fell to the wayside. The two adults left with misdemeanors, and because his counsel was so ineffective, he remained in adult court and walked away with a felony instead of being removed back to juvenile court. So I don't think there's anything about these details that Mr. Williams needed to be afraid of for purposes of deciding whether or not to flee or not. And then finally, the government talks about a range of evidence that shows, contemporaneous evidence that shows that Mr. Williams must have known. But the fact that the government or the court thinks that Mr. Williams should have known and therefore must have known is not the inquiry. That elides the distinction between the fact of a felon status and the knowledge of a felon status, which is the entire point of rehafe. The fact that his docket stated felony or his plea agreement stated felony has no meaning when he thought that the YRA got rid of that conviction, and it is that understanding that matters. And for purposes of the evidentiary hearing, which, again, is a low bar, and the government acknowledges that, there is no reason why this case should not have gotten an evidentiary hearing. It's completely different than Lyons. Childs, anything? Judge Rauch? Okay, thank you. Okay, thank you. We ask this court to reverse. Case is submitted.
judges: Katsas; Rao; Childs